**Gershberg v. Camera Wholesalers, Inc., Not Reported in A.3d (2014)**
57 Conn. L. Rptr. 716

2014 WL 1283077
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut,
Judicial District of Stamford–Norwalk.

David GERSHBERG et al.
v.
CAMERA WHOLESALERS, INC. et al.

No. FSTCV126014627S.
|
Feb. 26, 2014.

**Attorneys and Law Firms**

Coles Baldwin & Kaiser LLC, Fairfield, for David Gershberg et al.

Law of Loccisano Turret & Rosenbaum, Wallingford, for Camera Wholesalers, Inc. et al.

**Opinion**

ANTHONY D. TRUGLIA, JR., J.

**\*1** Defendant Regal Manufacturing Co., Inc. ("Regal") has moved for summary judgment in the above-captioned case on the third and fourth counts of plaintiffs' revised amended complaint dated April 12, 2013 (the "complaint"). Regal argues that insofar as the plaintiff's case against it is a products liability case brought pursuant to General Statutes §§ 52–572m et seq., the plaintiffs are unable to prevail against it because they have failed to identify a defect in the item which they manufactured which the plaintiffs allege caused their injuries. Regal further argues that the fourth count of loss of consortium is derivative of the products liability claim and must also fail if the court finds in its favor with respect to the products liability claim asserted in the third count.

I. Facts and Procedural Background.

At all times relevant to the plaintiffs' complaint, the defendant Camera Wholesalers, Inc. ("Camera Wholesalers") operated a retail camera store in Stamford open to the general public providing goods and services to amateur and professional photographers. One of the plaintiffs, David Gershberg, himself an amateur photographer, was a customer of the defendant who stopped by the store on June 25, 2010, to make a purchase. The plaintiffs allege in their complaint that while Mr. Gershberg was waiting in line, he felt a pain in his foot and asked a store employee for something to sit on while he continued to wait. Mr. Gershberg alleges that a member of the staff provided him with a "high metal stool" (manufactured by Regal) which he then sat on. Mr. Gershberg further alleges that shortly after he started sitting on it, the stool suddenly "collapsed underneath him" causing him to fall to the floor and hit his head. Mr. Gershberg alleges that he sustained severe injuries to his head, neck and back in the fall, and that he continues to suffer lasting effects from the injuries he received that day. The plaintiffs initially brought suit only against Camera Wholesalers, which then moved to add Regal, the manufacturer of the stool, as an apportionment defendant pursuant to General Statutes § 52–577.

In their four-count complaint against both defendants, the plaintiffs allege in the alternative that Mr. Gershberg's injuries were caused: (1) by the "affirmative negligence" of Camera Wholesalers in that the company's employees provided him with the dangerous stool which he used; (2) by Camera Wholesalers in that it carelessly and negligently created a dangerous condition on their business premises which caused the plaintiff to fall; and/or (3) by Regal, in that it manufactured the stool, which Mr. Gershberg alleges was a dangerous and defective product. The plaintiffs allege also in their complaint that both defendants are liable to them for loss of consortium due to the loss of services and companionship that Mr. Gershberg was able to provide his wife prior to the incident.

In support of Regal's motion defendant's counsel has submitted an affidavit of Mr. Tim Byrnes, an employee of Camera Wholesalers, who affirms that his employer purchased the metal stool in question along with several others from Regal in 2008. Mr. Byrnes affirms, among other things, that the "Regal Stools" did not require assembly and "have never been modified in any way." He further states that both before and since the incident with Mr. Gershberg, numerous other customers and employees have used the Regal stools (including the one used by Mr. Gershberg) and no one has ever had any complaints with them. Mr. Byrnes states that at the time of the incident,

**Gershberg v. Camera Wholesalers, Inc., Not Reported in A.3d (2014)**
57 Conn. L. Rptr. 716

prior to his fall, Mr. Gershberg made no complaint regarding the stool in question. He states also that at no time did Camera Wholesalers have to make any repairs to any of the Regal Stools, including the one used by Mr. Gershberg. Mr. Byrnes also states that the stool used by Mr. Gershberg was still present at Camera Wholesalers at the time suit was filed, or a little less than two years after the incident. Finally, Mr. Byrnes states that "none of the Regal Stools were broken, missing pieces or defective in any way."

**\*2** Regal also includes excerpts from Mr. Gershberg's deposition testimony in which he is asked to identify the defect in the stool that caused his injuries, and also to confirm exactly how the metal stool collapsed, leading him to fall. Regal argues that because Mr. Gershberg is unable to identify the defect in the product that it manufactured, and how that defect caused his injuries, Regal is entitled to summary judgment in its favor as a matter of law.

In response, both in their Memorandum in Opposition to the motion and in oral argument, the plaintiffs argue first that Regal has failed to establish a prima facie case for summary judgment. The plaintiffs next argue that Mr. Gershberg has in fact established that the stool was dangerous and/or defective, and that Regal's product caused his injuries. Plaintiffs submit for the court's consideration the entire deposition transcript of Camera Wholesaler's employee, Mr. Timothy Byrnes, and also the entire transcript of Mr. Gershberg's deposition testimony which they contend proves that issues of fact exist as to the existence of a defect and how it caused the plaintiffs' injuries and losses. In particular, the plaintiffs point out what they claim are significant discrepancies between Mr. Byrnes' affidavit and his deposition testimony that make his statements unreliable, or worse, and should therefore not be relied upon by the court.

II. Analysis.

Practice Book § 17–49 provides that summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." "In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v. Borkowski, 206 Conn. 495, 500, 538 A.2d 1031 (1988).

The purpose of a motion for summary judgment is to dispose of actions lacking a triable issue of material fact. Dorazio v. M.B. Foster Electric Co., 157 Conn. 226, 228, 253 A.2d 22 (1968). When deciding a motion for summary judgment, the trial court views the evidence "in the light most favorable to the non-moving party." (Internal quotation marks omitted.) Rodriguez v. Testa, 296 Conn. 1, 6–7, 993 A.2d 955 (2010). "The test is whether a party would be entitled to a directed verdict on the same facts." (Internal quotation marks omitted.) Connecticut Bank & Trust Co. v. Carriage Lane Associates, 219 Conn. 772, 781, 595 A.2d 334 (1991). "The courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact ... As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent." (Internal quotation marks omitted.) Zielinski v. Kotsoris, 279 Conn. 312, 318–19, 901 A.2d 1207 (2006).

**\*3** Connecticut products liability law holds that "[i]n order to recover under the doctrine of strict liability in tort the plaintiff must prove that: (1) the defendant was engaged in the business of selling the product; (2) the product was in a defective condition unreasonably dangerous to the consumer or user; (3) the defect caused the injury for which compensation was sought; (4) the defect existed at the time of the sale; and (5) the product was expected to and did reach the consumer without substantial change in condition." Giglio v. Connecticut Light & Power Co., 180 Conn. 230, 234, 429 A.2d 486 (1980). See also 2 Restatement (Second) Torts § 402A (1965).[1]

In determining whether a product's design is defective, Connecticut adheres to the "consumer expectations" test, in which defectiveness is measured by the expectations of the ordinary consumer. The *Giglio* decision also held that "[w]hether a product is unreasonably dangerous is a question of fact to be determined by the jury ... [T]his includes those questions arising under [the five-part test for strict products liability], and the jury can draw their own reasonable conclusions as to the expectations of the ordinary consumer and the knowledge common in the community at large." Giglio v. Connecticut Light & Power Co., supra, 180 Conn. at 235, 429 A.2d 486.

Applying the five-part test of *Giglio* to the present case, the court finds that Regal manufactured the product in question and that it reached Mr. Gershberg in substantially the same condition as when manufactured. But there is insufficient evidence that the stool at the time

Case 3:17-cv-00878-MPS   Document 42-1   Filed 10/31/18   Page 3 of 6

Gershberg v. Camera Wholesalers, Inc., Not Reported in A.3d (2014)
57 Conn. L. Rptr. 716

of the incident was in a defective condition that was unreasonably dangerous to Mr. Gershberg.

The court respectfully disagrees with the plaintiffs' argument that identification of the manufacturing defect that caused plaintiffs' injuries and losses is not required to avoid entry of summary judgment in a products liability case such as this. "Both premises liability and product liability claims require that a plaintiff identify the specific defect that caused his or her injuries," *Paranto v. Piorkowski,* Superior Court, judicial district of New Haven, Docket No. CV–07–5013627–S (September 22, 2010 Zoarski, J.T.R.). For example, in the case of *Kubera v. Barnes & Noble Booksellers, Inc.,* Superior Court, judicial district of Hartford, CV–07–5012729–S (March 10, 2009, Elgo, J.), a premises liability case, the court granted summary judgment in favor of the defendant where the plaintiff was unable to say with certainty what caused her to fall on the defendant's business premises.

In *Paranto, supra,* Superior Court, Docket No. CV–07–5013627–S, a products liability case, the court granted the defendants' motion for summary judgment on facts similar to the present case. In *Paranto,* the plaintiff was injured while using a trampoline at a friend's home and brought suit against the maker of the trampoline as well as the homeowners. *Id.* Ms. Paranto testified in her deposition that the trampoline seemed to be working the way a trampoline should; that she could not say if there was anything wrong with it before or while she was using it; and that she could not say if anyone was at fault for her injuries or if there was something wrong with the trampoline. *Id.*

**\*4** Similarly, in the present case, Mr. Gershberg concedes in his deposition testimony that he did not see any bent or broken legs or parts of the stool after his fall, and when asked specifically what collapsed, he replied, "well, that remains to be determined." When asked what portion of the stool collapsed or changed from its normal orientation, he stated "yeah, well, I would have no way of knowing that obviously." (Gershberg Transcript, pp. 47 and 48.) Mr. Gershberg admits to being conscious at the scene, yet could not state that he saw the stool broken or in pieces (Gershberg Transcript, p. 64.) Mr. Gershberg was also unable to state that any bystanders witnessed the stool collapsing under him (Gershberg Transcript, p. 53), as no one came to him after the incident to say that they saw that the stool had broken in some way. In short, there is insufficient evidence of a malfunction of the stool in the first place, and therefore no evidence that a manufacturing defect caused the plaintiffs' injuries.

The court also respectfully disagrees with plaintiffs'

counsel's description of Mr. Byrnes' affidavit as inadmissible or made "in bad faith." Plaintiffs' counsel is correct that only admissible evidence may be considered by the court in ruling upon a motion for summary judgment. Practice Book § 17–46 ("opposing affidavits shall be made on personal knowledge and shall set forth such facts as would be admissible in evidence ..."). But the objections of plaintiffs' counsel go to the weight of Mr. Byrnes' statements, not their admissibility. After carefully reviewing his affidavit and the entire transcript of Mr. Byrnes' deposition testimony, the court agrees with defense counsel that any inconsistencies pointed out by plaintiffs' counsel are immaterial and do not render the content of the affidavit inadmissible for summary judgment consideration. For example, Mr. Byrnes never states that he personally witnessed the incident. He can and does testify to the best of his personal knowledge and belief that prior to the incident the stools required no assembly; that prior to and after the incident the stool (including the one used by Mr. Gershberg) were used by many staff and customers without incident; that to the best of his knowledge following the incident neither he nor any other employees of Camera Wholesalers had to make any repairs to the stools.

The court can and does make the reasonable inference from Mr. Byrnes' statements that the stool which Mr. Gershberg used on the date of the incident did not in fact "collapse." Webster's Third New International Dictionary (1983), defines collapse as "to break down completely: fall apart in confused disorganization: crumble into insignificance or nothingness: disintegrate," or "to fall or shrink together abruptly and completely: fall into a jumbled or flattened mass through the force of external pressure: fall in." Collapse can also be defined as "to cave in, fall in or give way." *Id.* It is true that Mr. Gershberg stated several times his belief that the stool collapsed underneath him. But the mere assertion of a fact does not make it so. Taken and read together, and viewed in the light most favorable to the plaintiffs, the deposition transcripts submitted by plaintiffs do not present sufficient evidence that the metal stool in fact malfunctioned by collapsing underneath him on the day of the incident, or that the stool was otherwise dangerous or defective.

**\*5** In response, the plaintiffs cite several cases in support of their argument that a party does not need to identify a specific defect in order to prevail on a products liability claim, but none are directly on point. For example, the plaintiffs cite the case of *Liberty Mutual Ins. Co. v. Sears, Roebuck & Co.,* 35 Conn.Supp. 687, 406 A.2d 1254 (App.Sess.), cert. denied, 177 Conn. 754, 399 A.2d 526 (1979), where liability was found on the part of the seller

Case 3:17-cv-00878-MPS   Document 42-1   Filed 10/31/18   Page 4 of 6

Gershberg v. Camera Wholesalers, Inc., Not Reported in A.3d (2014)
57 Conn. L. Rptr. 716

of a color television set that caught fire. The case is distinguishable from the present case because the fire marshal located the television as the cause of the fire that damaged the insured's apartment. *Id.,* at 689, 406 A.2d 1254. While there may have been a question as to precisely what defect in the television caused the fire, there was no question that it was the television that started the fire. *Id.,* at 691, 406 A.2d 1254. Conversely, there has been no such expert determination here as to the cause of Mr. Gershberg's fall.

Plaintiffs also cite *Potter v. Chicago Pneumatic Tool Co.,* 241 Conn. 199, 694 A.2d 1319 (1997), a repetitive exposure case involving allegedly defective pneumatic power tools. The plaintiffs in *Potter* alleged that the defendants had manufactured pneumatic grinders and other hand tools that produced excessive vibration which over time directly caused their injuries. *Id.,* at 204. *Potter* confirms that Connecticut products liability law imposes strict liability on manufacturers of defectively designed or otherwise unreasonably dangerous products. *Id.,* at 214, 694 A.2d 1319. The court in *Potter* held that whether a product was unreasonably dangerous or defective was a question of fact to be determined by the "consumer expectation standard," that is, whether the product is unreasonably dangerous "to an extent beyond that which would be contemplated by the ordinary consumer who purchases it ..." (Internal quotation marks omitted.) *Id.,* at 214–15, 694 A.2d 1319. A manufacturer could be held liable for a defective design, according to the court, even where the defendants could show that no safer alternative design was available when the products were manufactured. *Id.,* at 219, 694 A.2d 1319. Plaintiffs' reliance on *Potter* is misplaced because *Potter* involved the safety of complex industrial power tools with many moving parts where the plaintiffs could identify the design defect which caused their injuries. Plaintiffs are correct that *Potter* confirms that in some cases the malfunction doctrine is appropriate, noting that "[i]t is not necessary that the plaintiff in a strict tort action establish a specific defect as long as there is evidence of some unspecified dangerous condition." (Internal quotation marks omitted.) *Id.,* at 225, 694 A.2d 1319. In the present case, by contrast, the plaintiffs have no evidence of the unspecified dangerous condition alleged to have caused their injuries.

The plaintiffs argue, *inter alia,* that the "malfunction doctrine" applies in this case, because there are sufficient corroborating facts and circumstances from which the court can conclude that there was a manufacturing defect in the stool, and sufficient additional corroborating circumstances to prove that the defect caused the plaintiffs' injuries.

**\*6** The trial court in *Fallon v. Matworks,* 50 Conn.Supp. 207, 216–17, 918 A.2d 1067 [42 Conn. L. Rptr. 726] (2007), recently described the malfunction doctrine as follows: "In modern products liability litigation ... a plaintiff normally must prove that a product was defective, that the product contained the defect when it left the defendant's control, and that the defect proximately caused the plaintiff's harm. A plaintiff who fails to establish each of these elements by a preponderance of the evidence fails to make a prima facie case. If a manufacturing defect causes a product accident, usually the plaintiff can prove the defect and its causal relation to both the manufacturer and the accident largely by direct evidence—as by testimony from an expert that the product contained an identifiable production flaw, deviating from design specifications, that caused the product to fail in a particular manner. Sometimes, however, a product may malfunction under circumstances suggesting a manufacturing defect ... but without leaving any direct physical evidence as to how or why, specifically, the product failed to operate properly. In such cases, the absence of direct evidence of product defectiveness and causation hampers a plaintiff's efforts to establish a prima facie products liability case ... Under the malfunction doctrine, a plaintiff may establish a prima facie case of product defect by proving that the product failed in normal use under circumstances suggesting a product defect. Put otherwise, a product defect may be inferred by circumstantial evidence that (1) the product malfunctioned, (2) the malfunction occurred during proper use, and (3) the product had not been altered or misused in a manner that probably caused the malfunction. The malfunction doctrine may be described less formally as providing that a plaintiff need not establish that a specific defect caused an accident if circumstantial evidence permits an inference that the product, in one way or another, probably was defective." (Internal quotation marks omitted.)

The court in *Fallon* continued: "While courts have applied the malfunction doctrine in many cases to help the plaintiffs get to the jury when evidence of a specific defect is unavailable, plaintiffs have lost many other cases in which they relied unreasonably upon this type of circumstantial proof. The doctrine presents a seductive but faulty shelter for plaintiffs with insufficient proof of defect and causation, and the law reports brim with decisions that recite the propriety of the doctrine as a general proposition that hold it inapplicable to the facts. The opinions in such cases frequently note that, while the malfunction doctrine provides a method for plaintiffs in proper cases to establish defectiveness and causation, the law will not allow plaintiffs or juries to rely on guess,

Case 3:17-cv-00878-MPS   Document 42-1   Filed 10/31/18   Page 5 of 6

**Gershberg v. Camera Wholesalers, Inc., Not Reported in A.3d (2014)**
57 Conn. L. Rptr. 716

conjecture or speculation. Although the malfunction doctrine may come to a plaintiff's rescue when circumstances fairly suggest the responsibility of a product defect, it is hornbook law that proof of a product accident alone proves neither defectiveness or causation. Nor does further proof that the accident was caused by a malfunction suffice to prove these elements. *The crucial additional showing required of a plaintiff in a malfunction case is the negation of causes for the malfunction other than a product defect.*" (Emphasis added; internal quotation marks omitted.) *Id.,* at 218, 918 A.2d 1067.

***7** For example, in the case of *Marisco v. Allegre Banquets, Inc.,* Superior Court, judicial district of New Haven, Docket No. CV–08–5018088–S (August 6, 2008, Zoarski, J.T.R.), cited by Regal in its memorandum, the plaintiff claimed that he was injured when he bit into a prime rib dinner provided by the defendant. The plaintiff simply was unable to identify what actually caused his injury, testifying at his deposition only that he remembered a "hard, sharp" object going into his tooth as he was eating. *Id.* An attendant removed the patron's dinner plate prior to the plaintiff or anyone else having an opportunity to examining it, and the plaintiff was unable to identify exactly what caused his injury. *Id.*

The court in *Marisco* found no evidence demonstrating the food's defectiveness and that the burden therefore shifted to the plaintiff, to "present evidence demonstrating a disputed factual issue as to the prime rib's defectiveness." *Id.* The court reasoned that "the plaintiff's mere guess, conjecture or speculation that there was a foreign object in his prime rib, which caused his injuries,"

was not sufficient to meet his burden of proof and granted summary judgment in favor of the restaurant. *Id* .

The present case presents a similar situation. The court is unable to find sufficient circumstantial evidence that the stool manufactured by Regal was defective in the first instance or evidence negating other reasons for Mr. Gershberg's fall.[2] The malfunction doctrine is therefore not applicable to the present case. As stated by the Supreme Court in *Potter v. Chicago Pneumatic Tool Co., supra,* 241 Conn. at 225, 694 A.2d 1319, there must be "evidence of some unspecified dangerous condition" for the plaintiff to prevail in a products liability action. But in the present case the court has only conjecture or speculation upon which to rely, which would lead to a directed verdict in Regal's favor.

### III. Conclusion

For the reasons set forth herein, Regal's motion for summary judgment no. 153.00 is granted.

**All Citations**

Not Reported in A.3d, 2014 WL 1283077, 57 Conn. L. Rptr. 716

Footnotes

[1]   "(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold. (2) The rule stated in Subsection (1) applies although (a) the seller has exercised all possible care in the preparation and sale of his product, and (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller." 2 Restatement (Second) Torts § 402A (1965).

[2]   The court notes Mr. Gershberg's admission to his physician shortly after the incident that he fell off a chair and hit the back of his head. (Gershberg Transcript, P. 62.) Mr. Gershberg does say that this is an incorrect or incomplete statement, but the only evidence before the court at this time is a reference to Mr. Gershberg's physician's notes stating that Mr. Gershberg told him that he fell off a chair and hit the back of his head.

**End of Document**                              © 2018 Thomson Reuters. No claim to original U.S. Government Works.

**Gershberg v. Camera Wholesalers, Inc., Not Reported in A.3d (2014)**
57 Conn. L. Rptr. 716