2017 WL 6884118
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES
BEFORE CITING.

Superior Court of Connecticut,
Judicial District of Hartford at Hartford.

Raymond C. FERRARI
v.
JOHNSON & JOHNSON, INC., et al.

HHDCV166067308S
|
November 28, 2017

**Opinion**

CESAR A. NOBLE, J.

**\*1** Before the court is the motion for summary judgment
of the defendants, Johnson & Johnson, Inc., and Synthes,
Inc., seeking judgment in their favor against the plaintiff,
Raymond Ferrari, as to all counts of his complaint. For
the reasons set forth below, the defendants' motion for
summary judgment is granted.

I

FACTS AND PROCEDURAL HISTORY

On April 7, 2016, the plaintiff filed a four-count
complaint against the aforementioned defendants,[1] and
alleged the following facts. The plaintiff underwent spinal
surgery, including a posterolateral fusion at Hartford
Hospital on August 17, 2012, in which the plaintiff's
surgeon, Dr. Paul Schwartz, implanted various
components of the defendants' product, the Synthes
Matrix spinal system (product). This system included
stabilizing titanium rods that were used in the fusion of
the plaintiff's spine from T7–8 through L1–2. The

plaintiff's surgery required a junction of the new titanium
hardware to a previously placed steel construct at L2–
through S1. On April 4, 2013, the plaintiff underwent a
second surgery, which revealed a fracture of the left
titanium rod at the junction of the new instrumentation
with the old steel construct.

The complaint contains four counts. Counts one and two
allege product defect claims pursuant to the Connecticut
Product Liability Act, General Statutes § 52–572m et
seq.,[2] relating to the failure and fracture of the defendants'
product. The product defects identified in the first two
counts are a failure to warn regarding the use of the
product in patients of the plaintiff's size, history of prior
spinal fusions, instrumentations and the junction of
titanium hardware to stainless steel hardware. Complaint,
¶ 14a and b. The plaintiff broadly also alleges that the
product was "designed, fabricated, manufactured, tested,
distributed, marketed and or/sold without adequate or
proper precautions to prevent the failure and fracture of
components once installed in patients." Complaint, ¶ 14c.
Counts three and four allege breaches of express and
implied warranties.

The deadline for the plaintiff to disclose any expert
witnesses was January 15, 2017, pursuant to a mutually
agreed-upon scheduling order adopted by the court,
Robaina, J. None have been disclosed.[3] Trial is scheduled
to begin on February 8, 2018.

**\*2** The defendants move for summary judgment on the
grounds that: (1) the plaintiff has failed to produce an
expert witness; (2) the plaintiff has failed to establish that
the product was defective; (3) Comment K of the
restatement bars the plaintiff's claims; (4) the learned
intermediary doctrine bars the plaintiff's claims; and (5)
the plaintiff has failed to establish causation. The plaintiff
objects to the motion for summary judgment on the basis
that a product defect can be inferred from the evidence
without expert testimony and that genuine issues of
material fact exist as to whether there were adequate
warnings.

II

STANDARD OF REVIEW

"[S]ummary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) *Cefaratti v. Aranow*, 321 Conn. 637, 645 (2016). "In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to judgment as a matter of law. The courts hold the movant to a strict standard." (Internal quotation marks omitted.) *Romprey v. Safeco Ins. Co. of America*, 310 Conn. 304, 319–20 (2013).

"Once the moving party has met its burden ... the opposing party must present evidence that demonstrates the existence of some disputed factual issue ... It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact ... are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § [17–45]." (Internal quotation marks omitted.) *Ferri v. Powell–Ferri,* 317 Conn. 223, 228 (2015).

III

DISCUSSION

"All [product liability] claims, whether alleging a design defect, manufacturing defect or failure to warn defect, are governed by the same elements that this court has applied since it adopted § 402A [of the Restatement (Second) of Torts]: (1) the defendant was engaged in the business of selling the product; (2) the product was in a defective condition unreasonably dangerous to the consumer or user; (3) the defect caused the injury for which compensation was sought; (4) the defect existed at the time of sale; and (5) the product was expected to and did reach the consumer without substantial change in condition." (Internal quotation marks omitted.) *Bifolck v. Philip Morris, Inc.*, 324 Conn. 362, 434, 152 A.3d 1183 (2016); see also *Izzarelli v. R.J. Reynolds Tobacco, Co.*, 321 Conn. 172, 184–85, 136 A.3d 1232 (2016).

The defendants argue that the plaintiff's failure to disclose an expert is fatal to his claims. Specifically, the defendants argue that the plaintiff's claim must be analyzed under the risk-utility test because of its complex design and, therefore, expert testimony is needed. Further, the defendants argue that the instructions and warnings included in the product's packaging were accurate and sufficient and, therefore, the plaintiff's failure to warn claim is barred by the learned intermediary doctrine. The plaintiff argues that he does not need expert testimony because the jury can infer that a design defect existed from circumstantial evidence, such as the fact that the rod broke. Additionally, the plaintiff contends that the learned intermediary doctrine does not apply because there is a question of fact as to whether the instructions and warnings were diluted by the input of the defendant's product consultant.

A

Design Defect

**\*3** Our Supreme Court first established duel tests for proving that a design defect is unreasonably dangerous in *Potter v. Chicago Pneumatic Tool Co.*, 241 Conn. 199, 220–22, 694 A.3d 1319 (1997). In *Potter*, the court declined the defendants' invitation "to abandon the consumer expectation standard and adopt the requirement that the plaintiff must prove the existence of a reasonable alternative design in order to prevail on a design defect claim." *Id.*, 215. The court rejected such a requirement, recognizing that there are circumstances where it would be appropriate for a jury to infer a defect from circumstantial evidence without expert testimony. *Id.*, 217–18. The court also recognized, however, "that there may be instances involving complex product designs in which an ordinary consumer may not be able to form expectations of safety." *Id.*, 219. Therefore, a modified consumer expectation test was adopted that incorporated risk-utility factors, resulting in two tests: the ordinary consumer expectation test and the modified consumer expectation test. *Id.*, 220–22. The court's decision in

*Potter* left litigants and courts alike uncertain as to when each test was appropriate, with some courts finding that the modified test is reserved for complex products and other court concluding the opposite. See *Izzarelli v. R.J. Reynolds Tobacco, Co., supra*, 321 Conn. 191–92. This uncertainty was clarified in *Izzarelli,* where the Supreme Court revisited its decision in *Potter,* to more clearly set forth when each test should be used. *Izzarelli v. R.J. Reynolds Tobacco, Co., supra*, 194. Although recognizing that *Potter* could be read to support the interpretation that the modified consumer expectation test is "reserved exclusively for complex product designs for which an ordinary consumer could not form expectations"; *Izzarelli v. R.J. Reynolds Tobacco, Co., supra*; the court declined to adopt a simple/complex divide. *Id.*, 195.

"We are not persuaded that *Potter* intended to draw a simple/complex divide. The court in *Potter* pointed to the problem in proving consumers' safety expectations for complex products because that concern was implicated in the case before the court and was the most obvious misfit for the ordinary consumer expectation test. *Potter* involved pneumatic hand tools alleged to be defective because they exposed users to excessive vibration, which in turn caused permanent vascular and neurological damage to the users' hands ... Notably, although concerns about proof for complex products were foremost in the court's mind when adopting the modified test, the court stated no limitations on the circumstances in which that test could be applied. Instead, all of the limitations discussed were in reference to the application of the ordinary consumer expectation test." (Citations omitted; footnote omitted.) *Izzarelli v. R.J. Reynolds Tobacco, Co., supra*, 195–96.

The court therefore held that "the ordinary consumer expectation test is reserved for those limited cases in which a product fails to meet a consumer's legitimate, commonly accepted minimum safety expectations. Expert testimony on product design is not needed to prove the product's defect, nor is the utility of the product's design an excuse for the undisclosed defect ... All other cases should be determined under the modified consumer expectation test." (Citations omitted.) *Izzarelli v. R.J. Reynolds Tobacco Co., supra*, 321 Conn. 202–03. Shortly after this decision, the Supreme Court once again examined the tests for a strict liability claim alleging design defect and relabeled the two tests the consumer expectation test and the risk-utility test in order to better distinguish the two. *Bifolck v. Philip Morris, Inc., supra*, 324 Conn. 432.

In the present case, the defendants argue that the plaintiff cannot prevail on his design defect claim because he has failed to retain expert testimony and, therefore, cannot prove that that a defect existed or that any alleged defect caused his injuries. The defendants contend that the risk-utility test is the applicable test. The plaintiff counters that design defects can be inferred from circumstantial evidence and posits that the matter can be decided under the consumer expectation test. On the basis of the following, it is clear that the product's complexity and use dictate that the default test, the risk-utility test, is proper test.

"Although it is true that an ordinary consumer may, under certain circumstances, be able to form expectations as to the safety of a product ... [our courts] nonetheless consistently have held that expert testimony is required when the question involved goes beyond the field of the ordinary knowledge and experience of judges or jurors." (Citation omitted; internal quotation marks omitted.) *White v. Mazda Motor of America, Inc.*, 139 Conn.App. 39, 49, 54 A.3d 643 (2012), aff'd, 313 Conn. 610, 99 A.3d 1079 (2014). Similarly, "[w]hen the causation issue involved goes beyond the field of ordinary knowledge and experience of judges and jurors, expert testimony is required." (Internal quotation marks omitted.) *Theodore v. Lifeline Systems Co.,* 173 Conn.App. 291, 311, 163 A.3d 654 (2017). The product at issue is a titanium rod, which is one component of a larger spinal system. This system is clearly the kind of complex design contemplated by our Supreme Court in *Potter,* in deciding to modify the consumer expectation test. *Potter v. Chicago Pneumatic Tool Co., supra*, 241 Conn. 219. The present case involves spinal surgery, spinal anatomy, and a system that includes various rods, screws and other components meant to be implanted in a person's spine. Expert testimony is thus essential, because the claims will raise and address complex and highly technical concepts and questions, which are clearly beyond the everyday experiences of the ordinary consumer. Cf. *White v. Mazda Motor of America, Inc.,* Superior Court, judicial district of Hartford, Docket No. CV–08–6003322–S (2011 WL 3211221, at *4) (June 22, 2011, Robaina, J.) ("in cases involving automobiles expert testimony is particularly essential due to the highly technical, complex and specialized questions raised by such claims", aff'd, 139 Conn.App. 39, 54 A.3d 643 (2012); see *Walters v. Howmedica Osteonics Corp.,* 676 F.Supp.2d 44, 50 (D.Conn. 2009) ("[i]n products liability cases ... where the issue concerns a product's design ... it would seem that expert opinion is the only available method to establish defectiveness, at least where the design is not patently defective" [internal quotation marks omitted] ).

**\*4** Although the plaintiff is correct that Connecticut courts do, in some circumstances, allow a jury to infer a

defect from evidence without expert testimony, he leaves out a necessary qualifier: that an inference can be made in the *absence of other identifiable causes. Potter v. Chicago Pneumatic Tool Co., supra*, 241 Conn. 217 ("[t]he fact finder can, where other identifiable causes are absent, that the mere evidence of a malfunction is sufficient evidence of a defect" [internal quotation marks omitted] ); see also *Bifolck v. Philip Morris, Inc., supra*, 324 Conn. 419 n.11. In the present case, the defendant has presented evidence that a common cause of an implant loosening or breaking is the failure of the patient's bones to fuse, also referred to as nonunion or pseudo-arthrosis. The plaintiff's surgeon, Dr. Schwartz testified at his deposition that hardware loosening or breaking does not mean that the hardware is defective. He also testified that nicotine doubles the fusion failure rate. The inserts included with the spinal system also contain warnings that indicate ways in which breakage can result, such as corrosion, other medical conditions like degenerative diseases or diabetes, and failure to follow post-operative instructions. Thus, the fact that the rod broke is insufficient to establish a defect in the absence of expert testimony.

Therefore, due to the plaintiff's failure to produce expert testimony concerning the allegedly defective design of the spinal system and its titanium rod components, and what may have caused the rod to break, the court finds that the defendants have met their burden of demonstrating that there is no genuine issue of fact as to the plaintiff's strict liability design defect claim.

B

Failure to Warn

The failure to provide adequate warnings and instructions, is itself a defect. *Giglio v. Connecticut Light & Power Co.*, 180 Conn. 230, 236, 429 A.2d 486 (1980). There are certain products that cannot be made safe because of their very nature. See 2 Restatement (Second) of Torts, § 402A, comment (k). "A manufacturer of an unavoidably unsafe product can avoid strict liability if the product is properly prepared, and accompanied by proper directions and warning ... Generally, a manufacture's duty to warn of dangers associated with its products pertains only to known dangers and runs to the ultimate user or consumer of those products ... The learned intermediary doctrine,

which is supported by comment (k) to § 402A of the Restatement (Second) of Torts, is an exception to this general rule ...

"The learned intermediary doctrine provides that adequate warnings to prescribing physicians obviate the need for manufacturers of prescription products to warn ultimate consumers directly. The doctrine is based on the principle that prescribing physicians act as learned intermediaries between a manufacturer and consumer and, therefore, stand in the best position to evaluate a patient's needs and assess [the] risks and benefits of a particular course of treatment." (Citations omitted; internal quotation marks omitted.) *Vitanza v. Upjohn Co.*, 257 Conn. 365, 375–76, 778 A.2d 829 (2001). In *Vitanza*, our Supreme Court adopted comment (k) to § 402A of the Restatement (Second) of Torts in the context of prescription drugs; *id.*, 376; and the learned, intermediary doctrine was later extended to prescription medical devices in *Hurley v. Heart Physicians, P.C*, 278 Conn. 305, 317, 898 A.2d 777 (2006).

In the present case, the evidence, both the defendants' and the plaintiff's demonstrates that the learned intermediary doctrine bars the plaintiff's claim. The defendants have attached the two inserts which are included with the spinal system, a generic insert regarding metallic surgical implants in general, and an insert specific to the spinal system. Both inserts were exhibits at Dr. Schwartz's deposition, at which he testified that the inserts were accurate in their description of the product as well as the risks, such as the hardware loosening or breaking if a patient's spine fails to heal or fuse. The insert indicates that the physician must weigh the risks versus the benefits to the patient and Dr. Schwartz testified that a relative contraindication is that you might not want to do something but may determine that it is acceptable because other factors outweigh the risk of harm. Finally, Dr. Schwartz testified that the decision to use the hardware was his decision, and that it was not relevant to him that the prior implanted components and the defendants' components were made of different metals.

**\*5** The plaintiff argues that there is a question of fact whether the defendants' consultant diluted the warnings and instructions because his obesity and prior implanted hardware indicate that the product-components should not have been used on him. He argues that Dr. Schwartz relied on advice from the defendants' agent and made an improper selection of implants as a result. In support, he points to the deposition testimony of Dr. Schwartz and a radiology journal article about spinal surgery hardware. This evidence does not raise a question of fact for two reasons. First, the article attached to the plaintiff's

objection is not properly submitted evidence; neither the article nor the source from where it was obtained is authenticated and there is no indication of the validity or accuracy of the article's research, cited sources, or conclusions.[4] Moreover, even if the court were to entertain this evidence, it does not support the plaintiff's argument that the warnings and instructions were inadequate. In fact, the article actually supports a conclusion that the product was accompanied by adequate warnings and instructions. Although the article does discuss proper implant selection and that morbid obesity can place stress on implants, it also discusses other risks of implant failure, such as pseudo-arthrosis, smoking, and failure to follow post-surgical instructions. All of this information is discussed in the inserts included with the defendants' spinal system.

Second, the plaintiff has no evidence to support his contention that the consultant influenced Dr. Schwartz or diluted the included warnings and inserts with his advice. The plaintiff cites to a single piece of Dr. Schwartz's deposition testimony, in which he indicates that the consultant would give him papers describing the properties of the various components and that he thinks he asked him what could be used that is stronger than titanium. There is no testimony or other evidence that shows that the consultant had any impact on Dr. Schwartz's decisions regarding the plaintiff's surgery. Accordingly, there is no question of fact that the learned intermediary doctrine bars the plaintiff's failure to warn claim.

## C

### Breach of Warranty

The plaintiff's failure to produce expert testimony is also fatal to his breach of warranty claims. "Proof that a defect in the product caused the injury in controversy is a perquisite to recovery for product-caused injury in every products liability case, whether the action is grounded on negligence, breach of warranty, strict liability in tort ... or a combination of such theories." (Internal quotation marks omitted.) *Theodore v. Lifeline Systems Co., supra*, 173 Conn.App. 308. Without expert testimony to establish the existence of a defect and the element of causation, the plaintiff cannot, as a matter of law, maintain a breach of warranty claim against the defendants.[5]

### CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is granted as to the entirety of the plaintiff's complaint.

**All Citations**

Not Reported in A.3d, 2017 WL 6884118

## Footnotes

1    The plaintiff asserts claims against the defendants in separate counts; however, he asserts identical claims based on the same allegations. Therefore, Johnson & Johnson, Inc., and Synthes, Inc., will be collectively referred to as the defendants.

2    The plaintiff does not clearly allege what product defect existed but rather recites various possibilities in his allegations including that the product was: "designed, fabricated, manufactured, tested, distributed, marketed and/or sold"; Compl., ¶ 14(c). The plaintiff's complaint is most clearly construed to allege a design defect. Accordingly, the court treats the complaint as alleging strict liability failure to warn and design defect claims and a breach of warranty claim. See *Boone v. William W. Backus Hospital,* 272 Conn. 551, 559, 864 A.2d 1 (2005).

3    The plaintiff has not requested permission to file an untimely disclosure of expert. For the reasons set forth below he is of the view that an expert is not necessary for him to prevail.

4    "A motion for summary judgment shall be supported by such documents as may be appropriate, including but not limited to affidavits, certified transcripts of testimony under oath, disclosures, written admissions and the like." Practice Book § 17–45. "Only evidence that would be admissible at trial may be used to support or oppose a motion for summary judgment." (Internal quotation marks omitted.) *Great Country Bank v. Pastore,* 241 Conn. 423, 436, 696 A.2d 1254 (1997). "[B]efore a document may be considered by the court [in connection with] a motion for summary

judgment, there must be a preliminary showing of [the document's] genuineness, i.e., that the proffered item of evidence is what its proponent claims it to be ... Documents in support of or in opposition to a motion for summary judgment may be authenticated in a variety of ways, including, but not limited to, a certified copy of a document or the addition of an affidavit by a person with personal knowledge that the offered evidence is a true and accurate representation of what its proponent claims it to be." (Internal quotation marks omitted.) *Bruno v. Geller,* 136 Conn.App. 707, 714–15, 46 A.3d 974, cert. denied, 306 Conn. 905, 52 A.3d 732 (2012).

5      Indeed, for identical reasons the lack of expert testimony is fatal to the failure to warn and design defect claims.

---

**End of Document**                                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.