Marisco v. Allegre Banquets, Inc., Not Reported in A.2d (2009)

KeyCite Yellow Flag - Negative Treatment
Distinguished by Griffin v. Allegre Banquets, Inc., Conn.Super., January 4, 2016

2009 WL 2785069
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut,
Judicial District of New Haven.

Raymond MARISCO
v.
ALLEGRE BANQUETS, INC.

No. CV085018088.
|
Aug. 6, 2009.

West KeySummary

1   **Food**
    ◀ Meat, fish and poultry

    There was no evidence of defectiveness of prime rib that patron ate, and thus patron, who allegedly injured his tooth when he bit into hard object while eating the prime rib, could not prevail on products liability claim. Neither patron nor anyone else present described seeing a foreign object in patron's dish. In addition, patron did not see what caused injury to his tooth. C.G.S.A. § 52-572m(b).

    Cases that cite this headnote

**Attorneys and Law Firms**

Bershtein Bershtein & Bershtein PC, Hamden, for Raymond Marisco.

Milano & Wanat, Branford, for Allegre Banquets, Inc.

**Opinion**

HOWARD F. ZOARSKI, Judge Trial Referee.

**\*1** The plaintiff, Raymond Marisco, alleges that he was injured when he bit into a hard, sharp object that was in his prime rib. On February 20, 2008, the plaintiff filed a four-count complaint against Woodwinds, Inc. and Silvio Suppa. The plaintiff's motion to substitute Allegre Banquets, Inc. in place of Woodwinds, Inc. and Silvio Suppa was granted by the court, Skolnick, J.T.R., on June 23, 2008. Subsequently, the plaintiff's motion to cite in an additional party, City Line Distributors, Inc., was granted by the court, Thompson, J., on July 1, 2008. Thereafter, the plaintiff filed an amended two-count complaint on July 21, 2008 against Allegre Banquets, Inc. and City Line Distributors, Inc., respectively.

Allegre Banquets, Inc., filed its motion for summary judgment on April 7, 2009. City Line Distributors, Inc., filed its motion for summary judgment on May 1, 2009. The plaintiff filed his memorandum in opposition to both motions on May 22, 2009.

"Practice Book § 17–49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) *Provencher v. Enfield,* 284 Conn. 772, 790–91, 936 A.2d 625 (2007). "In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. The courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact ... As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent ... When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue ... Once the moving party has

met its burden, however, the opposing party must present evidence that demonstrates the existence of some disputed factual issue ... It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact ... are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § [17–45]." (Internal quotation marks omitted.) *Zielinski v. Kotsoris,* 279 Conn. 312, 318–19, 901 A.2d 1207 (2006).

**\*2** Allegre Banquets, Inc. and City Line Distributors, Inc., the defendants, each make the same arguments in support of their motion for summary judgment. As a result, both of these motions will be addressed in this decision. The defendants argue that they are entitled to judgment as a matter of law because there is no genuine issue of material fact that the plaintiff cannot identify what caused the injury to his tooth and gums. The plaintiff counters that there is a genuine issue of material fact as to whether the prime rib was defective and argues that he has presented sufficient circumstantial evidence upon which a jury can conclude that the prime rib was defective.

The plaintiff brings this action pursuant to the Connecticut Product Liability Act. Section 52–572m(b) states: " 'Product liability claim' includes all claims or actions brought for personal injury, death or property damage caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging or labeling of any product. 'Product liability claim' shall include, but is not limited to, all actions based on the following theories: Strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent or innocent; misrepresentation or nondisclosure, whether negligent or innocent." Section 52–572n(a), in relevant part, states: "A product liability claim ... may be asserted and shall be in lieu of all other claims against product sellers, including actions of negligence, strict liability and warranty, for harm caused by a product."

"The Connecticut Supreme Court has outlined the essential elements of a strict product liability claim as follows: '(1) the defendant was engaged in the business of selling the product; (2) the product was in a defective condition unreasonably dangerous to the consumer or user; (3) the defect caused the injury for which compensation was sought; (4) the defect existed at the time of the sale; and (5) the product was expected to and did reach the consumer without substantial change in the condition.' *Giglio v. Connecticut Light & Power Co.,* 180 Conn. 230, 234, 429 A.2d 486 (1980)." *Fallon v. The*

*Matworks,* 50 Conn.Supp. 207, 226, 918 A.2d 1067 (2007) [42 Conn. L. Rptr. 726].

In *Fallon v. The Matworks,* the plaintiff claimed that she slipped and fell on a defective carpet tile. See *id.,* at 209, 918 A.2d 1067. The carpet tile, which allegedly caused her injury, was not available because after the incident, the entire floor covering was taken up and discarded. See *id.,* at 210, 918 A.2d 1067. Prior thereto, however, the plaintiff herself appeared on the premises and evidently obtained another carpet tile (or portion of a carpet tile) from the floor in question, although not the one that she allegedly tripped on. See *id.* This was marked as an exhibit at the plaintiff's deposition. See *id.*

**\*3** The plaintiff relied upon the "malfunction doctrine," which the court summarized as follows. See *id.,* at 216, 918 A.2d 1067. "In modern products liability litigation ... a plaintiff normally must prove that a product was defective, that the product contained the defect when it left the defendant's control, and that the defect proximately caused the plaintiff's harm. A plaintiff who fails to establish each of these elements by a preponderance of the evidence fails to make a prima facie case. If a manufacturing defect causes a product accident, usually the plaintiff can prove the defect and its causal relation to both the manufacturer and the accident largely by direct evidence-as by testimony from an expert that the product contained an identifiable production flaw, deviating from design specifications, that caused the product to fail in a particular manner. Sometimes, however, a product may malfunction under circumstances suggesting a manufacturing defect ... but without leaving any direct physical evidence as to how or why, specifically, the product failed to operate properly. In such cases, the absence of direct evidence of product defectiveness and causation hampers a plaintiff's efforts to establish a prima facie products liability case ... Under the malfunction doctrine, a plaintiff may establish a prima facie case of product defect by proving that the product failed in normal use under circumstances suggesting a product defect. Put otherwise, a product defect may be inferred by circumstantial evidence that (1) the product malfunctioned, (2) the malfunction occurred during proper use, and (3) the product had not been altered or misused in a manner that probably caused the malfunction. The malfunction doctrine may be described less formally as providing that a plaintiff need not establish that a specific defect caused an accident if circumstantial evidence permits an inference that the product, in one way or another, probably was defective." (Internal quotation marks omitted.) *Id.,* at 216–17, 918 A.2d 1067.

The court continued: "While courts have applied the malfunction doctrine in many cases to help plaintiffs get to the jury when evidence of a specific defect is unavailable, plaintiffs have lost many other cases in which they have relied unreasonably upon this type of circumstantial proof. The doctrine presents a seductive but faulty shelter for plaintiffs with insufficient proof of defect and causation, and the law reports brim with decisions that recite the propriety of the doctrine as a general proposition but hold it inapplicable to the facts. The opinions in such cases frequently note that, while the malfunction doctrine provides a method for plaintiffs in proper cases to establish defectiveness and causation, the law will not allow plaintiffs or juries to rely on guess, conjecture, or speculation. Although the malfunction doctrine may come to a plaintiff's rescue when circumstances fairly suggest the responsibility of a product defect, it is hornbook law that proof of a product accident alone proves neither defectiveness nor causation. Nor does further proof that the accident was caused by a malfunction suffice to prove these elements. The crucial additional showing required of a plaintiff in a malfunction case is the negation of causes for the malfunction other than a product defect." (Internal quotation marks omitted.) See *id., at 218, 918 A.2d 1067*. In light of the doctrine's applicability as a theory of liability against one of the named defendants, the *Fallon* court ultimately denied that defendant's motion for summary judgment. See *id., at 225–26, 918 A.2d 1067*.

**\*4** The malfunction doctrine was also applied in *Metropolitan Property & Casualty Ins. Co v. Deere & Co.,* Superior Court, judicial district of Hartford, Docket No. CV 05 4007111 (January 25, 2008, Wagner, J.T.R.) *(44 Conn. L. Rptr. 836).* In that case, the plaintiff's insureds experienced difficulty with their John Deere tractor when mowing the lawn, put the tractor in the garage of their home, and subsequently, a fire started in the garage, consuming the garage and adjacent home. See *id.* The plaintiff insurer, which covered the loss, filed suit against Deere & Company and the sellers of the tractor. See *id.* The defendants claimed that because all five expert witnesses agreed that the cause of the fire was undetermined, the evidence failed to show the presence of any defective condition in the John Deere tractor. See *id.,* at 837. The plaintiff on the other hand, argued that the cause of the fire constitutes the ultimate issue of fact which has to be decided by the jury. See *id.*

The court denied the defendants' motion for summary judgment on the basis that the plaintiff submitted the deposition testimony of the insured, in which she testified that on the day of the fire, the tractor was running poorly and that the tractor was shaking and that she was unable

to finish cutting the grass. See *id.* In addition, the insured testified that he had problems with the tractor after he brought the tractor in to have a tune up, specifically that the tractor had problems starting, would backfire, and blow black smoke. See *id.* In light of this evidence, the court concluded: "Whether the product was actually defective, or was the result of having a tune up which changed the product design in some way, taking it out of the realm of products liability, is an issue of material fact regarding the defectiveness of the tractor." See *id.*

Here, the plaintiff's complaint states: "[W]hile attempting to eat said prime rib, the plaintiff broke his front tooth due to a foreign object contained therein. At all times mentioned herein, the prime rib was consumed by the plaintiff without any changes from which it had been prepared, packaged and sold; and was consumed in the manner intended and foreseeable to the defendant." He alleges that the defendants are liable under *§ 52–572m* in one or more of the following ways. "[I]n that the prime rib dinner contained a hard foreign object; in that they failed to properly prepare food so that it would be safe for human consumption; in that they failed to test and/or inspect said food, thereby causing said food to be and remain in a hazardous condition; in that they prepared and sold said food which was unfit for human consumption, thereby causing a hazard to users; in that they failed to warn the plaintiff of the aforesaid condition; in that they breached the statutory warranty of merchantability in that said food was not fit for the ordinary purposes for which it was sold; in that they sold said food in the aforesaid defective, unsafe and dangerous condition, thereby subjecting the plaintiff to an unreasonable risk of injury; and in that they failed to properly train and supervise its employees with respect to the preparation of prime rib."

**\*5** In support of their motion, the defendants attach portions of the plaintiff's deposition. The deposition proceeded in the following manner:

Q. Take me through what happened after the—after you were served your food.

A. I was cutting into my prime rib, and I was eating it. I was probably almost half way through, and then I bit into something. It felt like something hard, sharp. It went into my tooth. I spit my food out, because it sent a shock through my mouth. See # 124, Exhibit A, page 27, ¶¶ 18–24.

Q. Did you notice anything that had caused the problem?

A. No. I didn't see anything in the dish. See *id.,* at page 30, ¶¶ 11–13.

Q. [D]id you have an opportunity to look at the dish to see what had caused you to hurt your tooth?

A. No.

Q. As you sit here today, you yourself did not see what caused your tooth to be injured?

A. No.

Q. To your knowledge, did anyone else at the table see what happened?

A. Not to my knowledge.

Q. Let me ask the question again. To your knowledge, did anyone at the table see what caused you to injure your tooth?

A. Not to my knowledge. See *id.,* at page 30, ¶ 25—page 31, ¶¶ 1–12.

Q. The attendant removed your plate while you were in the restroom?

A. Yes. See *id.,* at page 31, ¶¶ 22–24.

Q. As you sit here today, can you testify as to what exactly the object was that caused your injury?

A. No. See *id.,* at page 35, ¶¶ 14–16.

Q. And since this incident, have you—do you have any idea as to where you think the object came from?

A. No. See *id.,* at page 40, ¶¶ 13–16.

Through this deposition, the defendants have presented evidence that neither the plaintiff nor anyone else saw or had any knowledge of what caused his injuries. More specifically, this deposition shows that the plaintiff has no evidence, which demonstrates the prime rib's defectiveness. Thus, the burden shifts to the plaintiff to present evidence demonstrating a disputed factual issue as to the prime rib's defectiveness.

The plaintiff also attaches portions of his deposition. He states that he had been to Woodwinds as many as ten times prior to the night in question, had consumed prime rib on all of these occasions and had never had any problems. See # 126; Exhibit A, page 24, ¶¶ 1–22. The plaintiff, also points to portions of his deposition in which he describes a "hard, sharp" object going into his tooth.

Footnotes

See *id.,* at page 27, ¶¶ 20–24, page 30, ¶¶ 14–15. In his brief, the plaintiff argues that his statement that the prime rib contained a hard, sharp object is sufficient, in light of the fact that an attendant removed his plate before he could return to his table to examine what he had bitten into.

This court finds that the defendants have met their burden of demonstrating that there are no genuine issues of material fact and thus, they are entitled to judgment as a matter of law. The plaintiff's claim, although he did not argue so in his brief, falls under the malfunction doctrine, given that he lacks direct evidence of the prime rib's defectiveness. Under this doctrine, a product defect may be inferred by circumstantial evidence that the product malfunctioned, however, "the law will not allow plaintiffs or juries to rely on guess, conjecture, or speculation." *Fallon v. The Matworks, supra,* 50 Conn.Sup. at 218.

**\*6** Therefore, the plaintiff's mere guess, conjecture, or speculation that there was a foreign object in his prime rib, which caused him injuries, is not sufficient to meet his burden. Nowhere in the plaintiff's deposition does he or anyone else present during this incident describe seeing a foreign object in his dish. Furthermore, the plaintiff's statements that he had been to Woodwinds ten times prior to this incident and never encountered a problem with the prime rib are similarly unavailing.[1] This action is distinguishable from *Fallon v. The Matworks, supra,* 50 Conn.Sup. at 207 and *Metropolitan Property & Casualty Ins. Co. v. Deere & Co ., supra,* 44 Conn. L. Rptr. at 836. In both of those cases, the plaintiffs were able to produce circumstantial evidence of a product defect sufficient for the court to deny summary judgment. In *Fallon v. The Matworks, supra,* 50 Conn.Sup. at 210, the plaintiff obtained another carpet tile from the floor in question. In *Metropolitan Property & Casualty Ins. Co. v. Deere & Co., supra,* 44 Conn. L. Rptr. at 837, the plaintiffs produced evidence that, prior to the fire, the tractor in question had been running poorly, shaking, backfiring and blowing black smoke.

For all of the foregoing reasons, the defendants' motions for summary judgment, # 123 and # 125, are hereby granted.

**All Citations**

Not Reported in A.2d, 2009 WL 2785069

**Marisco v. Allegre Banquets, Inc., Not Reported in A.2d (2009)**

---

1    Evidence of prior accidents, however, may create a genuine issue of material fact if such evidence is relevant under the circumstances. See e.g., *Pickel v. Automated Waste Disposal, Inc.,* 65 Conn.App. 176, 185–86, 782 A.2d 231 (2001).

---

**End of Document**                                   © 2018 Thomson Reuters. No claim to original U.S. Government Works.

---